## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## EASTERN DIVISION - DETROIT

In re:                                         Case No. **15-41480-tjt**
                                               Chapter **13**
AUBRY STEFFON ORR,                             Judge **Tucker**
                     Debtor.

                                               Adversary Proceeding Case No.

_____/

AUBRY STEFFON ORR,
                     Plaintiff,

vs.

JEFFERSON VILLAGE II CONDOMINIUM
ASSOCIATION,
                     Defendant.

_____/

**Law Offices of Walter A. Metzen**
**Walter A. Metzen (P49779)**
**Shannon R. Warner (P67017)**
Attorneys for Plaintiff(s)
3156 Penobscot
645 Griswold Street
Detroit, MI  48226
(313) 962-4656; Fax: (313) 962-4241

_____/


### PLAINTIFF'S COMPLAINT TO DETERMINE THE EXTENT OF THE LIEN OF JEFFERSON VILLAGE II CONDOMINIUM ASSOCIATION


   **NOW COMES** Plaintiff, Aubry Steffon Orr, by and through his attorneys, the Law Offices of Walter A. Metzen, and for his Complaint to Determine the Extent of the Lien of Jefferson Village II Condominium Association, states as follows:

   1. Jurisdiction is granted in this matter pursuant to 28 U.S.C. Section 157(a), 28 U.S.C. Section 157(b)(1) and F.R.Bankr.P. 7001.  This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(K).

2. Jefferson Village II Condominium Association is a legal entity that governs the policies of a condominium project, and enforces the duties of its members, the condominium owners.

3. On March 10, 2015, Debtor, Aubry Steffon Orr, hereinafter referred to as the "Debtor," filed a Voluntary Petition for Chapter 13 bankruptcy under Title 11 of the United States Code.

4. On Schedule A, Debtor listed his primary homestead real estate located at 601 Fairview St., Detroit, Michigan 48214-3232, hereinafter referred to as the "Real Property." The legal description of this real estate is as follows:

   **UNIT 66, JEFFERSON VILLAGE II CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 44330, PAGES 123, ET. SEQ. WAYNE COUNTY RECORDS, AND DESIGNATED AS WAYNE COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 904.**

6. At the time of filing of his Chapter 13 Petition, Debtor valued the Real Property at $75,000.00. On March 10, 2015, the Real Property appraised at $98,000.00. (Please see copy of the appraisal of the Real Property dated March 10, 2015 attached hereto, as Exhibit 1).

7. There are two mortgages secured against the Real Property. The first mortgage secured against the Real Property is to Mortgage Electronic Registration Systems, Inc., acting solely as nominee to Lender, Quicken Loans, Inc. Debtor entered into this mortgage agreement on or about January 2, 2007 (Please see the Summary and Description of Mortgage Lien attached hereto, as Exhibit 2). As of February 5, 2015, the principal balance owed to this mortgagee was approximately $148,356.00 (Please see the debtor's Schedule D, included in the Court's record, and incorporated herein by reference).

8. The second mortgage secured against the Real Property is to Mortgage Electronic Registration Systems, Inc., acting solely as nominee to Lender, Quicken Loans, Inc. Debtor entered into this mortgage agreement on or about January 2, 2007 (Please see recorded junior mortgage attached hereto, as Exhibit 3). As of February 5, 2015, the principal balance owed to this mortgagee was approximately $41,670.00 (Please see the mortgage balance statement dated October 16, 2014 from Green Tree Servicing, LLC attached hereto, as Exhibit 4).

9. The Internal Revenue Service, hereinafter referred to as "the Service," acting as a governmental agency of the United States of America, recorded two individual tax liens against the Real and Personal Property prior to the filing of the Debtor's bankruptcy proceeding. The liens were both recorded with the Wayne County Register of Deeds on June 7, 2013, in the amounts of $20,214.01 and $2,216.64

consecutively. (Please see the Notices of Federal Tax Liens attached hereto, as Exhibit 5).

10. On or about May 11, 2009, Jefferson Village II Condominium Association, hereinafter referred to as "the Association," recorded a lien against the Debtor's Real Property prior to the filing of this bankruptcy proceeding, in the amount of $775.00 (Please see Notice of Lien for Nonpayment of Assessments attached hereto, as Exhibit 6). Upon the Debtor's information and belief, the amount currently owing to the Association as of February 5, 2015, is approximately $2,900.00, inclusive of past due assessments, late fees, and attorney fees and costs.

11. The principal amount owed on Debtor's first mortgage at the time Debtor filed his Chapter 13 Petition was approximately $148,356.00. The principal amount owed on Debtor's second mortgage at the time Debtor filed his Chapter 13 Petition was approximately $41,670.00. The amount owing to the Service pursuant to its tax liens at the time Debtor filed his Chapter 13 Petition was approximately $22,430.65. The value of the Property at the time Debtor filed his Chapter 13 Petition as listed in Debtor's Petition was $75,000.00. The Property appraised for $98,000.00 on March 10, 2015. Thus, there is no equity in the Debtor's Real Property in which the lien of the Association may attach.

12. The Supreme Court case of Nobleman v. American Savings Bank, 508 U.S. 324 (1993) held if the Debtors' homestead has no value or equity in which the mortgage claimant's lien may attach, that mortgage claimant holds an unsecured claim and the claimant's contractual rights are subject to modification by the Debtors' Chapter 13 Plan. See also *In Re McDonald v. Master Financial, Inc.* 205 F.3d 606 (3rd Cir. 2000), *In Re Bartee v. Tara Colony Homeowners Assoc.*, 212 F.3d 277 (5th Cir. 2000) and *In Re: George E. Lane and Sherry A. Lane v. Western Interstate Bankcorp* 2002 WL 18579 (6th Cir. Tenn.)

13. The Association's lien for the Real Property has no value. Both the Debtor's senior and junior mortgages to Mortgage Electronic Registration Systems, Inc. and the Service's tax liens exceed the fair market value of the Real Property. Likewise, there is no equity in the Real Property securing the Association's lien.

**WHEREFORE** Plaintiff, Aubry Steffon Orr, respectfully requests that this Honorable Court determine the junior lien of Jefferson Village II Condominium Association to be an unsecured claim and allow the Plaintiff to take the action that is required in order to protect his interest in the Real Property disclosed in the Debtor's Schedules, and award any further relief that this Court deems just in the premises.

Respectfully Submitted,

DATED: March 26, 2015

/s/ *Walter A. Metzen*
**Law Offices of Walter A. Metzen**
Walter A. Metzen (P49779)
Shannon R. Warner (P67017)
Attorneys for Plaintiff(s)
3156 Penobscot, 645 Griswold St.
Detroit, MI 48226
(313) 962-4656
detroitbankruptcylawyer@gmail.com

# APPRAISAL OF REAL PROPERTY



**LOCATED AT**

601 Fairview St # 66
Detroit, MI 48214-3232
See Supplemental Addendum

**FOR**

Aubry Orr

**OPINION OF VALUE**

98,000

**AS OF**

03/10/2015

**BY**

Harry Ford
H.J. Ford & Associates
18054 Oak Dr.
Detroit, MI 48221
(313) 575-1185
h.ford4@att.net

# EXHIBIT 1 8A3

## TABLE OF CONTENTS



Cover Page ............................................................................................................................................... 1
GP Condo  - Page 1 ................................................................................................................................... 2
GP Condo  - Page 2 ................................................................................................................................... 3
GP Condo  - Page 3 ................................................................................................................................... 4
GP Condo  - Page 4 ................................................................................................................................... 5
GP Condo  - Page 5 ................................................................................................................................... 6
Statement of Limiting Conditions ............................................................................................................ 7
Supplemental Addendum .......................................................................................................................... 9
Subject Photos ......................................................................................................................................... 14
Interior Photos ......................................................................................................................................... 15
Interior Photos ......................................................................................................................................... 16
Comparable Photos 1-3 ........................................................................................................................... 17
Scanned Document ................................................................................................................................... 18
Scanned Document ................................................................................................................................... 19
Building Sketch ........................................................................................................................................ 20
Location Map ........................................................................................................................................... 21
SureDocs Verify ...................................................................................................................................... 22

# INDIVIDUAL CONDO UNIT APPRAISAL REPORT

File No.: 601 Fairview 48214

## SUBJECT

| | |
|---|---|
| Property Address: 601 Fairview St | Unit #: 66 | City: Detroit | State: MI |
| Zip Code: 48214-3232 | County: Wayne | Legal Description: See Supplemental Addendum |

Assessor's Parcel #: W21I043100S066

Tax Year: 2014    R.E. Taxes: $ 558.00    Special Assessments: $ 0    Borrower (if applicable):

Current Owner of Record: Aubry & Viette Orr    Occupant: ☒ Owner ☐ Tenant (Market Rent) ☐ Tenant (Regulated Rent) ☐ Vacant

Project Type: ☒ Condominium ☐ Other (describe)    HOA: $ 350 ☒ per year ☐ per month

Market Area Name: Yorkshire Woods Sub #5    Map Reference: 19804    Census Tract: 5137.00

Project Name: Jefferson Village    Phase: 2

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: Bankruptcy/Probate/Divorce Purposes

Intended User(s) (by name or type): Aubry Orr

Client: Aubry Orr    Address: 601 Fairview St., Detroit, MI 48214

Appraiser: Harry Ford    Address: 18054 Oak Drive, Detroit, MI 48221

## MARKET AREA DESCRIPTION

| Location: | ☒ Urban | ☐ Suburban | ☐ Rural | Predominant Occupancy | Condominium Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE | AGE | One-Unit 93 % | ☒ Not Likely |
| Built up: | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | | $(000) | (yrs) | 2-4 Unit 2 % | ☐ Likely * ☐ In Process * |
| Growth rate: | ☐ Rapid | ☒ Stable | ☐ Slow | ☒ Owner | Low | | Multi-Unit 2 % | * To: |
| Property values: | ☒ Increasing | ☐ Stable | ☐ Declining | ☐ Tenant | 2 | 5 | Comm'l 3 % | |
| Demand/supply: | ☐ Shortage | ☒ In Balance | ☐ Over Supply | ☒ Vacant (0-5%) | 350 High | 140 | % | |
| Marketing time: | ☒ Under 3 Mos. | ☐ 3-6 Mos. | ☐ Over 6 Mos. | ☐ Vacant (>5%) | 75 Pred | 60 | | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): Freud St. to the South, Jefferson Ave. to the North, Marquette Dr. to the West, and Lycaste St. to the East. Subject is located in an urban setting where most homes are predominately 1, 1.5, & 2-story single family residences. Businesses and retail are found along the main roads. Employment centers and amenities are located in the immediate vicinity of the subject. REO and Short sales have impacted the market value of all homes in this area. These sales have become a major influence on the value of the subject property. It continues to be a 'buyer's market'. List prices are lower which has created shorter marketing times in the past year.

## PROJECT SITE DESCRIPTION

Zoning Classification: R-2    Description: Single Family Residential

Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Ground Rent (if applicable) $ NA/ NA    Comments: NA

Highest & Best Use as improved (or as proposed per plans & specifications): ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family Residential    Use as appraised in this report: Single Family Residential

Summary of Highest & Best Use: Subject is utilized at it's highest & best use.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Density | High |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Public/Average | Street | Concrete | ☒ | ☐ | Size | Typical |
| Gas | ☒ | ☐ | Public/Average | Curb/Gutter | Concrete/None | ☒ | ☐ | Topography | Level |
| Water | ☒ | ☐ | Public/Average | Sidewalk | Concrete | ☒ | ☐ | View | Residential |
| Sanitary Sewer | ☒ | ☐ | Public/Average | Street Lights | Public | ☒ | ☐ | | |
| Storm Sewer | ☒ | ☐ | Public/Average | Alley | None | | | | |

Other site elements: ☐ Inside Lot ☒ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 26163C0301E    FEMA Map Date 2/2/2012

Site Comments: See Supplemental Addendum

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.



Form GPCONDO_LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 539D06A3    6/2007

# INDIVIDUAL CONDO UNIT APPRAISAL REPORT

| Data source(s) for project information | MLS,PRD | | | | | |
|---|---|---|---|---|---|---|
| Project Description | ☒ Detached | ☐ Row or Townhouse | ☐ Garden | ☐ Mid-Rise | ☐ High-Rise | ☐ Other (describe) |

## PROJECT INFORMATION

### General Description of Project

| | | | | | Subject Phase | # | If Project Completed | # | If Project Incomplete | # |
|---|---|---|---|---|---|---|---|---|---|---|
| # of Stories | 2 | Exterior Walls | Brick | Units | 39 | | Phases | NA | Planned Phases | 2 |
| # of Elevators | None | Roof Surface | Asphalt | Units Completed | 20 | | Units | NA | Planned Units | NA |
| ☐ Existing ☐ Proposed ☒ Und.Cons. | | Total # Parking | NA | Units For Sale | 0 | | Units for Sale | NA | Units for Sale | 0 |
| Design (Style) | Colonial | Ratio (spaces/unit) | 2:1 | Units Sold | 20 | | Units Sold | NA | Units Sold | NA |
| Actual Age (Yrs.) | 9 Years | Parking Type(s) | Garage | Units Rented | 0 | | Units Rented | NA | Units Rented | 0 |
| Effective Age (Yrs.) | 9 | Guest Parking | Street | Owner Occup. Units | 20 | | Owner Occup. Units | NA | Owner Occup. Units | NA |

| Project Primary Occupancy | ☒ Principal Residence | ☐ Second Home or Recreational | ☐ Tenant |
|---|---|---|---|

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No

Management Group: ☐ Homeowners' Association ☐ Developer ☒ Management Agent (name of management agent or company): Your Peace of Mind

(517) 545-3900, ypm@ypminc.com

Was the project created by the conversion of existing building(s) into a condominium? ☐ Yes ☒ No   If Yes, describe the original use and date of conversion.

Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown   Have the documents been reviewed? ☐ Yes ☒ No   Comments: See Supplemental Addendum

Project Comments (condition, quality of construction, completion status, etc.): See Supplemental Addendum

Common Elements and Recreational Facilities: See Supplemental Addendum

## PROJECT ANALYSIS

Summary of condominium project budget analysis for the current year (if analyzed): NA - See Supplemental Addendum

Other fees for the use of the project facilities (other than regular HOA charges): NA

Compared to other competitive projects of similar quality and design, the subject unit charge appears ☐ High ☒ Average ☐ Low   (If High or Low, describe)

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes ☒ No   If Yes, describe and explain the effect on value and marketability.

## UNIT IMPROVEMENTS

| Unit Charge: $ 29.17 | per month X 12 = $ 350 | per year. | Annual assessment charge per year per SF of GLA = $ | 0.17 |
|---|---|---|---|---|

| Utilities included in the Unit Charge: | ☒ None | ☐ Heat | ☐ Air Conditioning | ☐ Electricity | ☐ Gas | ☐ Water | ☐ Sewer | ☐ Cable | ☐ Other |
|---|---|---|---|---|---|---|---|---|---|

Source(s) used for physical characteristics of property: ☒ New Inspection ☐ Previous Appraisal Files ☐ MLS ☐ Assessment and Tax Records ☐ Prior Inspection
☒ Property Owner ☐ Other (describe)   Data Source for Gross Living Area: Inspection

| General Description | | Exterior Description | | Foundation | ☐ N/A | Basement | ☒ N/A | Heating | Yes |
|---|---|---|---|---|---|---|---|---|---|
| Floor Location | NA | Foundation | Poured Con/Avg | Slab | None | Area Sq. Ft. | 1,304 | Type | FWA |
| # of Levels | 1 | Exterior Walls | Brick/Avg | Crawl Space | None | % Finished | 10 | Fuel | Gas |
| Design (Style) | Colonial | Roof Surface | Asphalt/Avg | Basement | Concrete | Ceiling | Open | | |
| ☒ Existing ☐ Proposed | | Gutters & Dwnspts. | Aluminum/Avg | Sump Pump | Yes | Walls | Poured Con | Cooling | Yes |
| ☐ Under Construction | | Window Type | 2 Hung/Avg | Dampness | None | Floor | Poured Con | Central | Yes |
| Actual Age (Yrs.) | 9 Years | Storm/Screens | Yes/Yes/Avg | Settlement | None | Outside Entry | None | Other | None |
| Effective Age (Yrs.) | 9 Years | | | Infestation | None | | | | |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP CONDO

Form GPCONDO_LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   Serial# 539D06A3   6/2007

# INDIVIDUAL CONDO UNIT APPRAISAL REPORT

## UNIT IMPROVEMENTS (continued)

| Interior Description | | Appliances | | Attic | ☒ N/A | Amenities | | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Carpet,Linoleum | Refrigerator | ☒ | Stairs | ☐ | Fireplace(s) # | | Woodstove(s) # | ☒ Garage # | 3 |
| Walls | Drywall | Range/Oven | ☒ | Drop Stair | ☐ | Patio | | | ☐ Covered # | |
| Trim/Finish | Wood/Painted | Disposal | ☒ | Scuttle | ☐ | Deck | | | ☐ Open # | |
| Bath Floor | Linoleum | Dishwasher | ☒ | Doorway | ☐ | Porch | | | Total # of cars | 3 |
| Bath Wainscot | Drywall | Fan/Hood | ☒ | Floor | ☐ | Fence | | | ☐ Assigned | |
| Doors | Wood | Microwave | ☒ | Heated | ☐ | Pool | | | ☐ Owned | |
| | | Washer/Dryer | ☒ | Finished | ☐ | Balcony | | | Space #(s) | |

Finished area **above grade** contains: 6 Rooms 3 Bedrooms 2.1 Bath(s) 2,051 Square Feet of Gross Living Area Above Grade

Are the heating and cooling for the individual units separately metered? ☒ Yes ☐ No (If No, describe)

Additional features: None

Describe the condition of the property (including physical, functional and external obsolescence): See Supplemental Addendum

## INCOME APPROACH

INCOME APPROACH TO VALUE (if developed) ☒ The Income Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE RENTAL # 1 | | COMPARABLE RENTAL # 2 | | COMPARABLE RENTAL # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 601 Fairview St, # 66 Detroit, MI 48214-3232 | | | | | | |
| Project | Jefferson Village | | | | | | |
| Phase | 2 | | | | | | |
| Proximity to Subject | | | | | | | |
| Current Monthly Rent | $ | $ | | $ | | $ | |
| Rent/GLA | $ /sq.ft. | $ | /sq.ft. | $ | /sq.ft. | $ | /sq.ft. |
| Rent Control | ☐ Yes ☐ No | ☐ Yes ☐ No | | ☐ Yes ☐ No | | ☐ Yes ☐ No | |
| Data Source(s) | | | | | | | |
| Date of Lease(s) | | | | | | | |
| Location | Urban | | | | | | |
| View | | | | | | | |
| Age | 9 Years | | | | | | |
| Condition | Average | | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6 3 2.1 | | | | | | |
| Gross Living Area | 2,051 sq.ft. | sq.ft. | | sq.ft. | | sq.ft. | |
| Utilities Included | | | | | | | |

Summary of Income Approach (including support for market rent and GRM):

Opinion of Monthly Market Rent $ X Gross Rent Multiplier = $ Indicated Value by Income Approach

## TRANSFER HISTORY

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): MLS,PRD

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: |
|---|---|
| Date: | |
| Price: | |
| Source(s): | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP CONDO

Form GPCONDO_LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   Serial# 539D06A3   6/2007

# INDIVIDUAL CONDO UNIT APPRAISAL REPORT

| SALES COMPARISON APPROACH TO VALUE (if developed) | | The Sales Comparison Approach was not developed for this appraisal. | | | | | |
|---|---|---|---|---|---|---|---|
| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
| Address | 601 Fairview St, # 66 Detroit, MI 48214-3232 | 1235 Lillibridge St # 1 Detroit, MI 48214 | | 681 Lemay St # 85 Detroit, MI 48214 | | 620 Fairview St # 10 Detroit, MI 48214 | |
| Project | Jefferson VIllage | Jefferson Village | | Jefferson Village | | Jefferson Village II | |
| Phase | 2 | 1 | | 1 | | 2 | |
| Proximity to Subject | | 0.16 miles N | | 0.09 miles NW | | 0.02 miles NE | |
| Sale Price | $ 50,000 | | $ 88,000 | | $ 103,000 | | $ 107,000 |
| Sale Price/GLA | $ 24.38 /sq.ft. | $ 41.04 /sq.ft. | | $ 46.42 /sq.ft. | | $ 53.13 /sq.ft. | |
| Data Source(s) | PRD | MLS,PRD | | MLS,PRD | | MLS,PRD | |
| Verification Source(s) | PRD | MLS# 214107366 | | MLS# 215004937 | | MLS# 214104146 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−) $ Adjust. | DESCRIPTION | +(−) $ Adjust. | DESCRIPTION | +(−) $ Adjust. |
| Sales or Financing | NA | Cash | | Cash | | FHA | |
| Concessions | NA | None | | None | | None | |
| Date of Sale/Time | 01/02/2007 | 01/16/2015 | | 02/12/2015 | | 11/26/2014 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Urban | Urban | | Urban | | Urban | |
| HOA Fees ($/Month) | $29.17 | $29.17 | | $26.67 | | $29.17 | |
| Common Elements and | None | None | | None | | None | |
| Recreational Facilities | None | None | | None | | None | |
| Floor Location | NA | NA | | NA | | NA | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Colonial | Colonial | | Colonial | | Colonial | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 9 Years | 10 Years | | 8 Years | | 8 Years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 6 / 3 / 2.1 | 8 / 4 / 2.1 | | 8 / 4 / 2.1 | | 6 / 3 / 2.1 | |
| Gross Living Area | 2,051 sq.ft. | 2,144 sq.ft. | | 2,219 sq.ft. | -2,500 | 2,014 sq.ft. | |
| Basement & Finished | Unfinished | Unfinished | | Finished | -3,000 | Unfinished | |
| Rooms Below Grade | None | None | | Rec rm | | None | |
| Functional Utility | Standard | Standard | | Standard | | Standard | |
| Heating/Cooling | FWA/CA | FWA/CA | | FWA/CA | | FWA/CA | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Parking | 3 Car Garage | 2 Car Garage | +1,000 | 2 Car Garage | +1,000 | 2 Car Garage | +1,000 |
| Porch/Patio/Deck | Porch | Porch | | Porch,Deck | -2,000 | Porch | |
| Fireplace(s) | None | 1 FP | -1,000 | None | | None | |
| Remodeling | None | None | | None | | Carp/Pnt,Baths,Kit | -10,000 |
| Net Adjustment (Total) | | ☐ + ☐ − | $ | ☐ + ☒ − | $ -6,500 | ☐ + ☒ − | $ -9,000 |
| Adjusted Sale Price of Comparables | | | $ 88,000 | | $ 96,500 | | $ 98,000 |
| Summary of Sales Comparison Approach | See Supplemental Addendum | | | | | | |

Indicated Value by Sales Comparison Approach $ 98,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP CONDO

Form GPCONDO_LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 539D06A3    6/2007

## COST APPROACH

**COST APPROACH TO VALUE (if developed)** ☒ The Cost Approach was not developed for this appraisal.

Summary of Cost Approach:

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 98,000    Cost Approach (if developed) $    Income Approach (if developed) $

Final Reconciliation   See Supplemental Addendum

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $ 98,000 , as of: 03/10/2015 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

## ATTACHMENTS

A true and complete copy of this report contains 19 pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work    ☒ Limiting Cond./Certifications    ☒ Narrative Addendum    ☒ Photograph Addenda    ☒ Sketch Addendum
☒ Map Addenda    ☐ Additional Sales    ☐ Additional Rentals    ☐ Flood Addendum    ☐ Hypothetical Conditions
☐ Extraordinary Assumptions    ☐ Budget Analysis

Client Contact: (313) 662-8208    Client Name: Aubry Orr
E-Mail: dehord212@yahoo.com    Address: 601 Fairview St., Detroit, MI 48214

## SIGNATURES

**APPRAISER**

www.SureDocs.com/validate

*Henry Ford*

Appraiser    Serial #:539D06A3

Company: H.J. Ford & Associates
Phone: (313) 575-1185    Fax: (313) 345-3411
E-Mail: h.ford4@att.net
Date of Report (Signature): 03/10/2015
License or Certification #: 1201073050    State: MI
Designation: State Licensed
Expiration Date of License or Certification: 07/31/2016
Inspection of Subject: ☒ Interior & Exterior   ☐ Exterior Only   ☐ None
Date of Inspection: 03/10/2015

**SUPERVISORY APPRAISER (if required)
or CO-APPRAISER (if applicable)**

Supervisory or
Co-Appraiser Name:
Company:
Phone:    Fax:
E-Mail:
Date of Report (Signature):
License or Certification #:    State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: ☐ Interior & Exterior   ☐ Exterior Only   ☐ None
Date of Inspection:

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP CONDO    Form GPCONDO_LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 539D06A3    6/2007

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, October 27, 1994.)

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is valued on the basis of it being under responsible ownership.

2. Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. This appraisal report must not be considered an environmental assessment of the subject property.

6. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10. The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report. This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

Form ACR2_DEFD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 639D06A3

**CERTIFICATION:** The appraiser certifies and agrees that:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.

9. Unless otherwise indicated, I have made a personal inspection of the interior and exterior areas of the property that is the subject of this report, and the exteriors of all properties listed as comparables.

10. Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**ADDRESS OF PROPERTY ANALYZED:** 601 Fairview St # 6, Detroit, MI 48214-3232

| APPRAISER: | SUPERVISORY or CO-APPRAISER (If applicable): |
|---|---|
| Signature: *Harry Ford* | Signature: |
| Name: Harry Ford | Name: |
| Title: State Licensed | Title: |
| State Certification #: | State Certification #: |
| or State License #: 1201075000 | or State License #: |
| State: MI   Expiration Date of Certification or License: 07/31/2016 | State:   Expiration Date of Certification or License: |
| Date Signed: 03/10/2015 | Date Signed: |
| | Did ☐  Did Not ☐  Inspect Property |

www.SureDocs.com/validate
Serial #:539D06A3

Page 2 of 2

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 601 Fairview St # 66 | | | | | |
| City | Detroit | County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | | | | | | |

This addendum is to become a part of the Appraisal Report submitted to you regarding the above described property.

## SCOPE OF APPRAISAL

The intended use of this appraisal is to provide an opinion of market value of the subject property. 3/10/2015 the date of valuation, for general purposes only. The property rights appraised are Fee Simple Estate. Fee Simple Estate is defined as "Absolute ownership unencumbered by any other interest or estate subject only to the limitations imposed by governmental powers of taxation, eminent domain, police power, and escheat."

The valuation process involves an interior and exterior inspection of the subject by the appraiser. Next, the appraiser gathers, analyzes and confirms applicable market data information using in-house files, multiple listing services, real estate brokers, local government records and other sources relevant to this assignment. The appraiser then applies the data gathered to the applicable approaches to value, reconciles the results and provides an opinion of market value.

## SUBJECT PROPERTY

### Legal Description
W FAIRVIEW UNIT 66; WAYNE COUNTY CONDO PLAN NO 904; "JEFFERSON VILLAGE II" RECORDED L44330 P123-200, FIRST AMENDMENT RECORDED L45556 P1-2 DEEDS, WCR 21/1054 7842 SQ FT. RELATED PARCEL #23001106.

Subject is a corner lot located approximately 1-2 blocks from the Detroit River. Subject has a 3 car garage. There is a front concrete porch. The entry features a laminate floor. The living room and dining area (6ft sliding door to the rear yard) feature carpet flooring and a vaulted ceiling. The kitchen (recessed lighting) has linoleum flooring with wood cabinets and laminate counter-tops. The master bedroom has a walk-in closet and carpet flooring. The lavatory has linoleum flooring and a pedestal sink. The master bathroom has linoleum flooring, separate jet tub & shower, and a wood dual vanity with laminate sink-top. The upper bathroom features linoleum flooring, wainscoting & tub-surround with a wood vanity and laminate sink-top. The lavatory has a ceramic-tile floor and wood vanity with a hard sink-top. The basement is unfinished, and has a forced-air furnace, 150 amp electrical service with breakers, and a 40 gallon hot water heater.

Refer to photo addendum for specifics of home and possible repairs.

## Last Market Sale & Sales History

Per PRD: 01/02/2007 - $50,000, Grantor: City Homes Development LLC, Grantee: Aubry & Viette Orr, Warranty Deed

## Foreclosure History

| Document Type | Notice Of Sale | Notice Of Sale |
|---|---|---|
| Foreclosure Filing Date | 01/02/2009 | 06/30/2008 |
| Recording Date | 01/02/2009 | 06/30/2008 |
| Final Judgment Amount | $241,895 | $221,882 |
| Original Doc Date | 01/09/2007 | 01/09/2007 |
| Original Book Page | 45824000223 | 45824000223 |

## Listing Information

No MLS data available

## IMPROVEMENTS

The appraiser makes the Extraordinary Assumption that the condition, quality and extent of materials and features are average/similar for the subject property and other properties in the subject's area. The appraised value includes only those items that are considered part of the real estate. The appraiser provides an opinion of value. The appraiser does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. The appraiser recommends a professional home inspection and/or environmental inspection.

## ECONOMIC CONDITIONS IN SOUTHEAST MICHIGAN

Michigan's economy has been rebounding with much of the growth coming from the manufacturing base which is regaining some stability. Michigan's economy continues to remain heavily dependent on a domestic auto industry that is concentrating on employment and operations in the state as its share of the overall market appears to be stabilizing. Fears about job security, unemployment, home prices, rising down payments, and credit scores were contributing to the housing market where potential home buyers were hesitant.

The real estate industry is experiencing a rebirth after five traumatic years (2008-2012) of Statewide decline. Statewide, property values now range from stable to increasing, depending on the community. Comparison tables reflect most communities with increasing prices. Marketing time also ranges from 3-6 months for some communities to under 3 months for other communities. Because of the above facts, the current real estate market is considered to remain in an increasing period.

## SALES COMPARISON APPROACH

The comparable sales presented within this report are considered the best available to this appraiser at the time for comparison to the subject (3/10/2015). Comparable sales information is based on MLS, builder sales records, and/or local government records.

All comparable sales have been verified as closed by the MLS and government records unless otherwise noted.
To ignore the predominant sale type while using sales from the minority of "arms length" sales, further away and in a different marketing area could easily be construed as misleading. Bank repossessions, short sales, REO, and "as is" sales are frequently

| Borrower | |
|---|---|
| Property Address | 601 Fairview St # 66 |
| City | Detroit | County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | |

occurring sales (albeit lessening) in this market area; consequently, comparables are distressed sales.

All comparables are distressed/short/bank owned 'reo' sales. The number of these types of sales has impacted the market value of all homes in this area. The use of these sales is reasonable as they have become a major influence on the value of the subject property.

The days on market for all comparables are considered typical. Research of this market, points to marketing time of 0-3 months presently. Marketing times may increase as housing prices continue to rise into 2015.

The appraiser is unaware of any special financing regarding comparable sales.

Research of the market data indicates that an adjustment for date of sale (sales from 6-12 months old) will be adjusted 2% of sale price.

Comparables may vary from the subject in style, but are not adjusted (not a definitive advantageous or adverse factor in marketability or price).

No adjustment for age is appropriated as the homes have approximate effective ages (Comparable 3 was remodeled in 2014, adjustments are necessary).

The gross living area adjustment is based on $15.00 per square foot where the variance exceeds 100 square feet. Adjustments for less than 100 square feet are not deemed necessary. There may be no need for adjustment depending upon multi-unit, per unit variances.

Basement and finishing are appropriated $10,000 for a fully finished basement (in the absence of a basement). $2,000 for a finished basement. $1,000 for a part finished basement.

Central air-conditioning is appropriated $2,000

A bedroom is appropriated $3,000

A full bathroom (3 fixture) is appropriated $1,500, and a lavatory (2 fixture) $750

Deck, porch, patio, balcony, and Florida/sun room are $1,500 - $2,000 each depending upon size.

A garage is appropriated $1,000 per car capacity.

A fireplace is appropriated $1,000

Due primarily to the value range of the subject and comparable sales, where adjustments tend to exaggerate the percentage, it may be necessary to exceed guidelines, gross and/or net, for some of the comparables. Exceeding the guidelines in this instance is not considered to be detrimental to the final estimate of value.

All comparables used were relevant for style, age, GLA, and proximity. Further the comparable sales offer the same quality of construction as the subject.

All comparable sales have something in common with the subject property and collectively they support the estimated market value.

## COMPARABLE SALES/LISTING HISTORY

### Comparable #1

### Last Market Sale & Sales History

| | |
|---|---|
| Recording Date: **01/26/2015** | Owner Name: **Simmons Joyce D** |
| Document Date: **01/12/2015** | Grantor: **Deutsche Bk Nat 2006-Ff1** |
| Sale Price: **$88,000** | Title Company: **Parks Title** |
| Liber/Page: **51981-271** | Multi/Split Sale: **Multi** |
| Deed Type: **Deed (Reg)** | |

| | | | | |
|---|---|---|---|---|
| Recording Date | 01/26/2015 | 12/20/2013 | 04/05/2006 | |
| Document Date (Sales History) | 01/12/2015 | 12/12/2013 | 10/20/2005 | |
| Sale Price | $88,000 | $319,512 | $45,000 | |
| Grantee | Simmons Joyce D | Deutsche Bk Natl Trust 2006-Ff1 | Beale Kevin T | |
| | | l1 | Morgan Lannis | |
| Grantee | | | | |
| Grantor | Deutsche Bk Nat 2006-Ff1 | Deputy Sheriff Of Wayne County | Jefferson Village Cmntys LLC | |
| Liber/Page | 51981-271 | 51240-523 | 44519-39 | |
| Deed Type | Deed (Reg) | Sheriff's Deed | Warranty Deed | |

### Foreclosure History

| | | | | |
|---|---|---|---|---|
| Document Type | Notice Of Sale | Notice Of Sale | Notice Of Sale | Notice Of Sale |
| Foreclosure Filing Date | 09/21/2011 | 10/20/2008 | 09/17/2008 | 04/11/2008 |
| Recording Date | 09/21/2011 | 10/20/2008 | 09/17/2008 | 04/11/2008 |
| Final Judgment Amount | $267,591 | $237,556 | $233,824 | $232,494 |
| Original Doc Date | 10/28/2005 | 10/28/2005 | 10/28/2005 | 10/28/2005 |
| Original Book Page | 43758000581 | 43758000581 | 43758000581 | 43758000581 |

### Listing Information

| | |
|---|---|
| Borrower | |
| Property Address | 601 Fairview St # 66 |
| City | Detroit |
| County | Wayne |
| State | MI |
| Zip Code | 48214-3232 |
| Lender/Client | |

MLS List Number: **214107366**
MLS Status: **Sold**
MLS Status Date: **01/19/2015**
MLS List Date: **10/12/2014**
MLS List Price: **$77,000**
MLS Original Price: **$77,000**
MLS Contract Date: **01/12/2015**

MLS Sold Date: **01/16/2015**
MLS Sold Price: **$88,000**
MLS List. Agent: **303589-Jeannie Proffitt**
MLS List. Office: **SOURCE REALTY LLC**
MLS Sale Agent: **Michael D Craig**
MLS Sale Office: **FRONT PAGE REALTY**

## Comparable #2:

### Last Market Sale & Sales History

Recording Date: **04/18/2007**
Document Date: Tax: 06/22/2006 MLS: **02/12/2015**
Owner Name: **Federal Natl Mtg Assn**
Sale Price: **$46,500**
MLS Sold Price: **$103,000**
Liber/Page: **46210-56**

Deed Type: **Warranty Deed**

Grantor: **Jefferson Village Cmntys LLC**
Title Company: **Lamont Title Corp**

| Recording Date Document Date | 10/16/2014 | 10/25/2013 | 04/18/2007 | 11/21/2006 | 07/07/2006 |
|---|---|---|---|---|---|
| (Sales History) Sale Price | 10/13/2014 | 10/17/2014 $318,761 | 06/22/2006 $46,500 | 10/27/2006 | 06/22/2006 |
| Nominal | Y | | | Y | Y |
| Grantee | FNMA | FNMA | Williams Larry | Williams Larry & Katrina Williams Katrina | Williams Larry |
| Grantee | | | | | |
| Grantor | Williams Katrina | Deputy Sheriff Of Wayne County | Jefferson Village Cmntys LLC | Williams Larry H | Jefferson Village Cmntys LLC |
| Liber/Page | 51805-772 | 51137-235 | 46210-56 | 45619-1106 | 44959-791 |
| Deed Type | Quit Claim Deed | Sheriff's Deed | Warranty Deed | Quit Claim Deed | Quit Claim Deed |

### Foreclosure History

Document Type: Notice Of Sale
Recording Date: **09/16/2013**
Final Judgment Amount: **$315,506**
Original Doc Date: **07/07/2006**
Original Book Page: **44959000792**

### Listing Information

MLS List Number: **215004937**
MLS Status: **Sold**
MLS Status Date: **02/12/2015**
MLS List Date: **01/16/2015**
MLS List Price: **$86,900**
MLS Original Price: **$86,900**
MLS Contract Date: **01/23/2015**

MLS Sold Date: **02/12/2015**
MLS Sold Price: **$103,000**
MLS List. Agent: **255426-Kent Colpaert**
MLS List. Office: **BEARING GROUP**
MLS Sale Agent: **Kevin P. Brennan**
MLS Sale Office: **BOLTON-JOHNSTON ASSOC**

| | |
|---|---|
| MLS Number | 214026228 |
| MLS Status | Unconditionally Withdrawn |
| MLS List Price | $88,000 |
| MLS List Date | 02/12/2014 |
| MLS Orig Price | $88,000 |
| MLS Listing Expiration Date | 08/12/2014 |
| MLS Listing Cancellation Date | 05/12/2014 |

## Comparable #3:

### Last Market Sale & Sales History

Recording Date: **12/16/2014**
Document Date: **11/26/2014**
Sale Price: **$107,000**
MLS Sold Price: **$107,000**
Price Per Square Foot: **$53.13**

Liber/Page: **51917-513**
Deed Type: **Warranty Deed**
Owner Name: **Smiley Harriette L**
Grantor: **Clark Of Time Capital Dev LLC**
Title Company: **First American Title Insurance**

| Recording Date Document Date | 12/16/2014 | 12/08/2014 | 10/17/2014 | 07/28/2014 | 05/21/2014 |
|---|---|---|---|---|---|
| (Sales History) Sale Price | 11/26/2014 $107,000 | 11/05/2014 | 09/16/2014 | 07/21/2014 | 05/02/2014 $5,000 |
| Nominal | | Y | Y | Y | Y |
| Grantee | Smiley Harriette | Clark Of Time Capital Dev LLC | Neighborhood Dev Of Economic Corp | Detroit Land Bk Authority | Clark Of Time Capital Dev LLC |
| Grantee | | | Imic | | |
| Grantor | Clark Of Time Capital Dev LLC | Neighborhood Dev Corp Of Economic | Detroit Land Bk Authority | City Of Detroit | Neighborhood Dev Corp Of Economic |
| Liber/Page | 51917-513 | 51902-1120 | 51810-978 | 51658-1362 | 51549-1375 |
| Deed Type | Warranty Deed | Quit Claim Deed | Quit Claim Deed | Quit Claim Deed | Quit Claim Deed |
| Recording Date Document Date | 08/30/2013 | 07/23/2013 | 06/13/2013 | | |
| (Sales History) | 08/28/2013 | 07/02/2013 | 06/05/2013 | | |

| | |
|---|---|
| Borrower | |
| Property Address | 601 Fairview St # 66 |
| City | Detroit |
| Lender/Client | |

| | County | Wayne | State | MI | Zip Code | 48214-3232 |

| | | | | |
|---|---|---|---|---|
| **Sale Price** | | | | |
| **Nominal** | Y | Y | Y | |
| **Grantee** | Neighborhood Dev Corp Of Economic | State Of Michigan | Neighborhood Dev Corp Of Economic | |
| **Grantee** | Imic | | Imic | |
| **Grantor** | Michigan Land Bk Fast Track Au | Neighborhood Dev Corp Of Economic | Fifth Third Bk | |
| **Liber/Page** | 51002-805 | 50921-519 | 50841-846 | |
| **Deed Type** | Quit Claim Deed | Quit Claim Deed | Quit Claim Deed | |

### Foreclosure History

| | |
|---|---|
| **Document Type** | Lis Pendens |
| **Foreclosure Filing Date** | 07/12/2013 |
| **Recording Date** | 07/16/2013 |
| **Document Number** | 335233 |
| **Book Number** | 50908 |
| **Page Number** | 1312 |
| **Lien Type** | Other |

### Listing Information

MLS List Number: **214104146**
MLS Status: **Sold**
MLS Status Date: **11/26/2014**
MLS List Date: **10/05/2014**
MLS List Price: **$115,000**
MLS Original Price: **$115,000**
MLS Contract Date: **10/06/2014**

MLS Sold Date: **11/26/2014**
MLS Sold Price: **$107,000**
MLS List. Agent: **132336-John C Costa**
MLS List. Office: **JIM SAROS AGENCY, INC**
MLS Sale Agent: **John C Costa**
MLS Sale Office: **JIM SAROS AGENCY, INC**

## STATE LAW REQUIREMENT

In Michigan, appraisers are required to be licensed and are now regulated by the Michigan Department of Licensing and Regulatory Affairs, P.O. Box 30018, Lansing, Michigan, 48909. The following licenses are issued by the department: State Certified General; State Certified Residential; State Licensed; Limited License. Limited License appraisers may only materially assist in an appraisal assignment under the direct supervision of a State Certified Appraiser.

## FINAL RECONCILIATION

The cost approach is based on the theory that a typically informed buyer would pay no more for a residential property than the cost to rebuild a replica of that property, with the same utility. The reliability of this approach is affected by the amount of depreciation present in the subject property. Also, the typical buyer of an older home does not consider building a replica as a viable or, in most cases, a possible alternative. Therefore, if this approach is used in this report, it does not carry as much weight as the sales comparison approach. Cost figures are obtained from a national cost service and adjusted to local conditions. Land values are obtained from analysis of multiple listing service records, local assessment records, and record documents from the county registrar of deeds. The depreciation is calculated using the age of the property divided by the total economic life of the structure.

The income approach involves estimation the gross monthly market rent for the subject property and multiplying by a gross monthly rent multiplier obtained by dividing the selling price of a property by the monthly rental at the time of sale. The reliability of this approach is dependent upon the availability, quality, and comparability of rented/sold properties. The income approach is deemed inapplicable if homes comparable to the subject are not typically rented in Subject's market area.

In the sales comparison approach, the appraiser analyzes competitive properties in the subject's neighborhood or market area and compares them to the subject. Adjustment for the differences that exist between the subject and the comparable are made resulting in an indicator of market value.

Finally, after having analyzed the values obtained from the approaches utilized in this report, a final indication of value is presented in this report. Most weight has been placed upon the sales comparison approach and is deemed the best indicator of value for the subject property.

The final valuation estimate precludes undisclosed conditions (such as easements, interests, or encroachments) that may be exhibited in the title report or survey.

## SUPPLEMENTAL CERTIFICATION:

I certify that, to the best of my knowledge and belief:
I have not performed any prior services regarding the subject property, as an appraiser, or in any other capacity, within the 3 year period immediately preceding acceptance of this appraisal assignment.

## COMPLIANCE TO THE INDUSTRY STANDARD

This appraisal conforms to the current edition of the Uniform Standards of Professional Appraisal Practice (USPAP) that became effective August 1990 by FNMA and the Office of the Comptroller, and with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) and Title XI.
The appraiser's analysis opinions and conclusions were developed in accordance with and in conformity to USPAP Standard 1, Real Property Appraisal Development. The results of the appraisal have been reported in a Summary Appraisal Report in

| Borrower | | | | | |
|---|---|---|---|---|---|
| Property Address | 601 Fairview St # 66 | | | | |
| City | Detroit | County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | | | | | |

compliance with USPAP Standard 2, Real Property Appraisal Reporting.

## COMPETENCY OF THE APPRAISER

This appraiser hereby certifies that he/she has the experience and knowledge to adequately execute this appraisal assignment competently and completely, without assistance of others unless otherwise noted within this report. If you have any questions or require additional information, please contact our office. Respectfully submitted

Please note that changes, alterations or corrections have been made to this appraisal assignment. These modifications have been made based on one or more of the following conditions: compliance with underwriter's condition(s), a secondary review process, typographical error(s), or discovery and consideration of additional data. Please replace all prior copies of this appraisal assignment, if any, with this amended report.  The effective date of the appraisal has changed based on the extraordinary assumption that the subject's condition has not changed from the prior report.

**• About SureDocs Signature**
This appraisal report has been electronically signed using SureDocs by a la mode.  It is as valid and legally enforceable as a wet ink signature on paper.  You can verify the authenticity of this report online at www.SureDocs.com/Validate.

# Subject Photo Page

| Borrower | | | | | |
|---|---|---|---|---|---|
| Property Address | 601 Fairview St # 66 | | | | |
| City | Detroit | County | Wayne | State MI | Zip Code 48214-3232 |
| Lender/Client | | | | | |



**Subject Front**

601 Fairview St, # 66
Sales Price 50,000
G.L.A. 2,051
Tot. Rooms 6
Tot. Bedrms. 3
Tot. Bathrms. 2.1
Location Urban
View Residential
Site
Quality Average
Age 9 Years



**Subject Rear**



**Subject Street**

## Interior Photos

| Borrower | | | | | |
|---|---|---|---|---|---|
| Property Address | 601 Fairview St # 66 | | | | |
| City | Detroit | County Wayne | State MI | Zip Code | 48214-3232 |
| Lender/Client | | | | | |


**Entrance**


**Living & Dining Area**


**Kitchen**


**Master Bedroom**


**Master Bath**


**Master Bath**


**Lavatory**


**Upper View**


**Upper Den**


**Upper Den**


**Upper Bath**


**Bedroom**


**Bedroom**


**Basement**


**Basement**

Form PICINT15 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE          Serial# 539D06A3

# Interior Photos

| | |
|---|---|
| Borrower | |
| Property Address | 601 Fairview St # 66 |
| City | Detroit | County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | |

 

**Basement**                    **Basement**

 

**Garage**                      **Garage**

 

**Porch**                       **Adjacent Empty Lot**

| Borrower | |
|---|---|
| Property Address | 601 Fairview St # 66 |
| City | Detroit |
| County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | |



**Comparable 1**

1235 Lillibridge St # 1

| | |
|---|---|
| Proximity | 0.16 miles N |
| Sale Price | 88,000 |
| GLA | 2,144 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 2.1 |
| Location | Urban |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 10 Years |




**Comparable 2**

681 Lemay St # 85

| | |
|---|---|
| Proximity | 0.09 miles NW |
| Sale Price | 103,000 |
| GLA | 2,219 |
| Total Rooms | 8 |
| Total Bedrms | 4 |
| Total Bathrms | 2.1 |
| Location | Urban |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 8 Years |



**Comparable 3**

620 Fairview St # 10

| | |
|---|---|
| Proximity | 0.02 miles NE |
| Sale Price | 107,000 |
| GLA | 2,014 |
| Total Rooms | 6 |
| Total Bedrms | 3 |
| Total Bathrms | 2.1 |
| Location | Urban |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 8 Years |

RICK SNYDER
GOVERNOR

# STATE OF MICHIGAN
## DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
### CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU

#### STATE LICENSED APPRAISER
LICENSE

L497302

THIS DOCUMENT IS DULY ISSUED UNDER THE LAWS OF THE STATE OF MICHIGAN

HARRY JOSEPH FORD, III
16054 OAK DRIVE
DETROIT MI 48221

PERMANENT I.D. NO.
1201073050

EXPIRATION DATE
07/31/2016

AUDIT NO
2860594



**GeneralStar**™

General Star National Insurance Company
P O Box 10360 (Attn: GSN)
Stamford, Connecticut 06904

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number: NJA936088A        Renewal of Number: NJA936088

1. **NAMED INSURED:** Harry J. Ford, III
   **STREET ADDRESS:**
   18054 Oak Drive
   Detroit, MI 46221

2. **POLICY PERIOD:** Inception Date: 05/17/2014      Expiration Date: 05/17/2015
   Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. **LIMITS OF LIABILITY:**
   Each Claim: $1,000,000
   Aggregate: $2,000,000
   **Claim Expenses** have a separate Limit of Liability:
   Each Claim: $1,000,000
   Aggregate: $2,000,000

4. **DEDUCTIBLE:**      Each Claim: $0_____ Aggregate: $0_____

5. **RETROACTIVE DATE:** 05/17/2012
   If a date is indicated, this policy will not provide coverage for any **Claim** arising out of any act, error, omission or personal injury which occurred before such date.

6. **ANNUAL PREMIUM:**      $700.00

   TOTAL Premium and Taxes/Surcharge :    $700.00

7. **ENDORSEMENTS:**
   This policy is made and accepted subject to the printed policy form together with the following form(s) or endorsement(s).
   AP 00 0001 (05/11), AP 04 0001 (05/11), AP 21 0002 (06/11), AP 27 0004 (06/11), AP 01 0018MI (06/11),
   AP 20 0001 (06/11), AP 08 0023MI (06/2011),

   This policy is exempt from the filing requirements of Section 2236 of the Insurance Code of 1956,1956 PA 218 and MCL 500.2236.

8. **PRODUCER NAME:** Mercer Consumer
   **STREET ADDRESS:** P. O. Box 8146
   Des Moines, IA 50306-8146

   _Cross Moore_
   Authorized Representative

Producer Code: 26460      Class Code: 73128
Date: 05/08/2014
AP 10 0001 06 11    © Copyright 2011, General Star Management Company, Stamford, CT    Page 1 of 1

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 539D06A3

## Building Sketch

| Borrower | |
|---|---|
| Property Address | 601 Fairview St # 66 |
| City | Detroit |  County | Wayne | State | MI | Zip Code | 48214-3232 |
| Lender/Client | |



| Area Calculations Summary | | |
|---|---|---|
| **Living Area** | | **Calculation Details** |
| First Floor | 1304 Sq ft | 40 × 32.6 = 1304 |
| Second Floor | 747.36 Sq ft | 34.6 × 21.6 = 747.36 |
| **Total Living Area (Rounded):** | **2051 Sq ft** | |
| **Non-living Area** | | |
| 1 Car Attached | 280.8 Sq ft | 13 × 21.6 = 280.8 |
| 2 Car Attached | 444.96 Sq ft | 20.6 × 21.6 = 444.96 |
| Basement | 1304 Sq ft | 40 × 32.6 = 1304 |
| Concrete Patio | 56.4 Sq ft | 6 × 9.4 = 56.4 |

TOTAL Sketch by a la mode, inc.

# Location Map

| Borrower | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 601 Fairview St # 66 | | | | | |
| City | Detroit | County | Wayne | State | MI | Zip Code 48214-3232 |
| Lender/Client | | | | | | |



Form MAP_LT.LOC - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    Serial# 639D06A3

 

This appraisal report has been electronically signed using SureDocs by a la mode. It is as valid and legally enforceable as a wet ink signature on paper, with a number of clear advantages. First, SureDocs helps to make identity theft and fraud a thing of the past. By using advanced third party identity verification from Equifax, you can be assured that the appraiser signing this report is really who they say they are. Plus, you can verify that the salient data points of the report have not been altered in any way.

To verify the integrity of this document, visit www.SureDocs.com/Validate. Enter the Serial Number and Signer Name for this document that are listed below.

SureDocs will generate a report showing the profile of the appraiser(s) who signed the report, the date and time the signatures were applied, and the salient data from the report at the time of signing. Comparing the report information in SureDocs to the document you have in hand will quickly reveal if any tampering has taken place.

**The report below is an example of what you would see when verified by SureDocs.**

Salient Data:

| | | | |
|---|---|---|---|
| Date of Sale: | 01/02/2007 | Condition: | Average |
| Borrower: | | Total Rooms: | 6 |
| Lender: | | Bedrooms: | 3 |
| Size (Sq.Ft): | 2,051 | Baths: | 2.1 |
| Price Per Square Foot: | 24.38 | Appraiser: | Harry Ford |
| Location: | Urban | Effective Date of Value ('as of'): | 03/10/2015 |
| Age: | 9 Years | Final Opinion of Value: | 98,000 |

Signer 1:
Harry Ford

Signer 2:

Signature:
Serial #:  539D06A3
Date Signed:  03/10/2015

Signature:
Serial #:
Date Signed:

Form SDVERIFY - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 539D06A3

- Searching
  - Real Estate
- FAQ
- About
- Wayne County - ROD
- Logout publicweb

## MORTGAGE - 207019731

### General Data

| | |
|---|---|
| Document Number | Return Address(es) |
| 207019731 | |
| Liber   Page | • Return |
| 45824   223 | • Alternate Address |

**Recording Date** — **Entry Date**
01/09/2007 08:55:00 AM   01/18/2007 12:00:00 AM

Return To
LAMONT TITLE CORP

**Number Pages**
16

Address1

**Dated Date** — **Consideration (Loan Amount)**
01/02/2007   $216,225.00

Address2

**Recording Fee** — **Tax Stamp Number**
$0.00

City State Zip

**Affidavit Filed?** ☐ — **Consideration Total Fees**

Mailback Date
01/23/2007 12:00:00 AM

### Names

| Grantor | Grantee |
|---|---|
| ORR AUBRY MARRIED | MORTGAGE ELECTRONIC REGISTRATION SY NOM |
| ORR VIETTE HW | QUICKEN LOANS INC |

### Notary Name

## Cross Reference

| Document Number | Liber | Page | Internal | Document Type |
|---|---|---|---|---|
| 208251280 | 47327 | 1140 | ☐ | |
| 2012467893 | 50321 | 43 | ☐ | |

### Legal

Plan#: 904 Condo: JEFFERSON VILLAGE II CONDO PLAN 904 Unit: 66 Municip: DETROIT TaxID: 21/042568 Street: 601 FAIRVIEW

### Notes



**EXHIBIT 2**



610     D2   001   003

2007 JAN -9 AM 8: 55

BERNARD J. YOUNGBLOOD
REGISTER OF DEEDS
WAYNE COUNTY, MI

LI-45B24     Pg-239
207019733   1/09/2007   08:55AM
Bernard J. Youngblood
Wayne Co. Register of Deeds

# EXHIBIT 3

## MORTGAGE

### This is a Future Advance Mortgage

**WORDS USED OFTEN IN THIS DOCUMENT:**

**(A) Security Instrument.** This document, which is dated    January 2, 2007
will be called the "Security Instrument."

**(B) Borrower.** Aubry Orr and Viette Orr, husband and wife

residing at 17550 Fielding , Detroit, MI 48219
sometimes will be called "Borrower" and sometimes simply "I" or "me".

**(C) Lender.** Quicken Loans Inc. will be called "Lender." Lender is a corporation that exists under the laws of The State of Michigan. Lender's address is 20555 Victor Parkway, Livonia, MI   48152   .

**(D) MERS.** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS exists under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(E) Note.** The Home Equity Line Agreement, Disclosure Statement and Note signed by Borrower and dated January 2, 2007    will be called the "Note." The Note provides for loan advances to be made by the Lender to the Borrower from time to time and for a period not to exceed   10   years (the "Draw Period"), during which loan advances may be repaid and reborrowed. The maximum principal amount, excluding protective advances, secured by this Security Instrument will not exceed the sum of US $40,525.00   . The Note also provides that after the Draw Period terminates, the then outstanding balance must be repaid within   20   years.

**(F) Property.** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) Sums Secured.** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY:**
I mortgage, warrant, grant and convey the Property, with power of sale, to MERS (solely as nominee for Lender and Lender's successors and assigns) and its successors and assigns subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving the Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraph 6 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or

(C) Keep all of my other promises and agreements under this Security Instrument.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

HELOC MI Mortgage         Page 1 of 6         2004/05   heml-1.pcl

LAMONT TITLE CORPORATION


(B) to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

**DESCRIPTION OF THE PROPERTY:** I give MERS (solely as nominee for Lender and Lender's successors and assigns) rights in the Property described in (A) through (I) below:
(A) The Property which is located at 601 Fairview Ave., Detroit, MI  48214

This Property is in                    Wayne                    County. It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.
(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this paragraph;

(C) All easements, rights and appurtenances attached to the Property that I have as owner of the Property described in subparagraph (A) of this paragraph;

(D) All rents or royalties from the Property described in subparagraph (A) of this paragraph;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this paragraph;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this paragraph;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this paragraph;

(H) All of the rights and Property described in subparagraphs (B) through (G) of this paragraph that I acquire in the future;

(I) All replacements of or additions to the Property described in subparagraphs (B) through (H) of this paragraph.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY:** I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**  This Security Instrument contains uniform promises and agreements that are used in real property security instruments all over the country. It also contains non-uniform promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

### UNIFORM COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY:**  I will pay to Lender on time principal and interest due under the Note and all late charges and other charges due under the Note.

**2. APPLICATION OF BORROWER'S PAYMENTS:** Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraph 1 above in the following order and for the following purposes:  First, to finance charges under the Note; next, to all other fees and charges due; and last, to principal.

**3. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS:** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

Any claims, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I continue paying the obligation in accordance with my written agreement; (B) In good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, but only during the lawsuit; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender,

HELOC MI Mortgage                    Page 2 of 6                    2004/03  heml-2.pcl


that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien that is not permissible under one of these three exceptions, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**4. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE:** I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage", hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premium and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then the Lender may do so.

The amount paid by the insurance company is called the "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 18 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the sums secured immediately before the Property is acquired by Lender or sold.

**5. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS:** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**6. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE:** If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender may, but is not required to, give me notice before Lender takes any of these actions. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 6. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to applicable law. In addition to the above, Lender shall have a right (but not an obligation) to make payments on any prior



mortgage and demand that such sums be paid to it immediately with interest at the Note rate.

**7. LENDER'S RIGHT TO INSPECT THE PROPERTY:** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**8. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY:** A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any monthly payments under the Note and under paragraph 1 above. However, Lender and I may agree in writing to those delays or changes.

**9. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS:** (A) Borrower's Obligations - Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) Lender's Rights - Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under paragraph 18 above to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

**10. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS:** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument; (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

**11. LOAN CHARGES:** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**12. LEGISLATION AFFECTING LENDER'S RIGHTS:** If a change in applicable law would make any provision of the Note or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument.



13.   **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT:** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in Paragraph (C) of the section above titled "Words Used often in this Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 13 or of applicable law.

14.   **LAW THAT GOVERNS THIS SECURITY INSTRUMENT:** This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms and the remaining terms will still be enforced.

15.   **BORROWER'S COPY:** I will be given one conformed copy of the Note and of this Security Instrument.

16.   **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED:** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

17.   **BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED:** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A)   I pay to Lender the full amount that would have been due under the Note and this Security Instrument if Lender had not required immediate payment in full;

(B)   I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(C)   I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D)   I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all four of these conditions, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraphs 12 or 16 above.

**NON - UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

18.   **LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS:** Lender shall give notice to me prior to acceleration if I breach any covenant or agreement in this Security Instrument (but not prior to acceleration under Paragraph 12 or 16, unless applicable law provides otherwise). The notice shall specify: (A) the default; (B) the action required to cure the default; (C) a date, not less than 30 days from the date the notice is given to me, by which the default must be cured; (D) that failure to cure the default on or before the date specified in the notice may result in acceleration of the Sums Secured by this Security Instrument and sale of the Property. The notice shall further inform me of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of mine to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all Sums Secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to me in the manner provided in Paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold, in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale.

The proceeds of the sale shall be applied in the following order: (A) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the person or persons legally entitled to it.

19. **LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT:** Upon payment of all Sums Secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge me a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

---

### Request for Notice of Default and Foreclosure
### Under Superior Mortgages and Deeds of Trust

I and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 6 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_Aubry Orr_
Borrower Aubry Orr                     01/02/2007 (Seal)
                                       Date

_Viette Orr_
Borrower Viette Orr                    01/02/2007 (Seal)
                                       Date

_____                _____(Seal)
Borrower                               Date

_____                _____(Seal)
Borrower                               Date

STATE OF MICHIGAN              }
                              } ss:
COUNTY OF          Wayne       }

On     January 2, 2007     , before me, the undersigned, a notary public in and for said state, personally appeared Aubry Orr and Viette Orr, husband and wife

personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the Instrument, the individual or the person upon behalf of which the individual(s) acted, executed the agreement.

My commission expires:

_____
Notary Public          Wayne County, Michigan

This Instrument was prepared by and record and return to:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI  48152

# Exhibit A

The land referred to in this Commitment is described as follows:

Land in the City of Detroit, County of Wayne, State of Michigan being more particularly described as:

Unit 66, Jefferson Village Condominium II, according to the Master Deed recorded in Liber 44330 Page 123 Wayne County records, and designated as Wayne County Condominium Subdivision Plan No. 904, as amended in the First Amendment to Master Deed recorded in Liber 45556 Page 1, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 59 of the Public Acts of 1978, as amended.

Commonly known as 601 Fairview; Tax Parcel Ward 21 Items 042568 (part), 042569 and 042570-1 (part)

When Recorded Return To:
Green Tree Servicing LLC
Attn: Document Custody, T326
7360 South Kyrene Rd
Tempe, AZ 85283



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2010-0671733 08/05/10 02:30 PM
1 OF 1
RAMIREZP

# LIMITED POWER OF ATTORNEY

| | |
|---|---|
| **TO** | **GREEN TREE SERVICING LLC** |
| **FROM** | **Countrywide Home Loans, Inc.** |
| **DATED** | **7/30/10** |
| **DEAL** | **Bank of America/Countrywide Chargeoff/Deficiency Flow Deal** |

### SPECIAL AND LIMITED POWER OF ATTORNEY
### IN FAVOR OF GREEN TREE SERVICING LLC

KNOW ALL MEN BY THESE PRESENTS:

Reference is hereby made to certain defaulted accounts (the "Accounts"), the collection obligations of which have been assigned to Green Tree Servicing LLC pursuant to that General Services Agreement dated as of December 11, 2009 (the "Agreement") between Green Tree Servicing LLC and Countrywide Home Loans, Inc. ("Servicer").

The undersigned does hereby appoint Green Tree Servicing LLC, and the following of Green Tree's affiliates: Green Tree-AL LLC, Green Tree Credit LLC, Green Tree Loan Company, Green Tree Consumer Discount Company (individually and collectively, "Green Tree") its true and lawful attorney-in-fact, but only for the purpose set forth herein, and the undersigned hereby authorizes and empowers Green Tree to take the following actions, to the extent authorized by the Agreement, for and in the name of Servicer:

(a)     with respect to the Accounts, to make, execute, acknowledge, swear to, record, publish, file, procure or repair any agreement, document, certificate, instrument, file or other paper that pertains to the Accounts, including, without limitation, to endorse checks and promissory notes, to execute assignments and releases of loans or liens and other instruments, documents and papers, to possess and procure all lender, collateral, correspondent or business files which pertain to the Accounts, to dispense with the same and the proceeds thereof all in accordance with and subject to the terms of the Agreement; and

(b)     with respect to the Accounts, to endorse, execute or deliver any and all documents or instruments necessary to foreclose on any loan or lien, to maintain the lien created by any debt or security instrument, or any portion thereof, and to execute upon or newly create any and all modifications, forbearance agreements, waivers, loan or other documents or amendments to any documents, and any or all other instruments of satisfaction or cancellation or of partial or full release or discharge, or of subordination or modification, and all other comparable instruments, including, without limitation, the recording or filing with the appropriate public officials such documents or instruments and the endorsement or deposit of any instrument or monies in connection with the liquidation, foreclosure, collection, settlement, modification, forbearance or sale of such loan or lien, whether or not in bankruptcy.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

This limited power of attorney is not intended to extend the powers granted to the Green Tree under the Agreement or to allow the Green Tree to take any action with respect to the Accounts not authorized by the Agreement.

IN WITNESS WHEREOF, Servicer has caused to be signed by a duly authorized officer, this Special and Limited Power of Attorney effective as of the date set forth above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
Name: _____Elizabeth Chen_____
Title: _____SVP_____

Witness:                                    Witness:

Name: Joseph Yandell                       Name:
Title: VP                                   Title:

STATE OF California        §
                          §
COUNTY OF Los Angeles      §

Before me, a Notary Public in and for the State of California, on this day personally appeared
Elizabeth Chen, known to me to be the person whose name is subscribed to the
foregoing instrument, and acknowledged to me that he/she is the SVP of Countrywide Home Loans, Inc.
and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 30th day of July, 2009. 2010

_____
Notary Public in and for the State of California

GLENDA J. DANIEL
COMM. # 1892235
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires
June 11, 2014

*Proprietary to Countrywide*                F-3                              vTIP2009

Case 15-41480-tjt   Claim 1-1   Filed 02/24/15   Page 20 of 20
15-41480-tjt   Doc 27   Filed 03/26/15   Entered 03/26/15 17:50:33   Page 38 of 48

# HOME EQUITY LINE AGREEMENT, DISCLOSURE STATEMENT AND NOTE

Date: January 2, 2007

Borrower: Aubry Orr

Property Address: 601 Fairview Ave.
Detroit, MI 48214

## CREDIT TERMS SUMMARY

Maximum Credit Line: $ 40,525.00

ANNUAL PERCENTAGE RATE: 12.250%,
Daily Periodic Rate: 0.0336%, Index: 8.250%,
Lifetime Cap: 18.000%, Margin: 4.000%

In this Agreement, "I, me, my, us, we, our, Borrower and Co-Borrower" refer to each and all persons who sign this Agreement. The words "you, your and Lender" refer to        Quicken Loans Inc.        (hereinafter referred to as "Lender"). The word "Account" means the Home Equity Line of Credit established in my name. The word "Agreement" means this Home Equity Line Agreement, Disclosure Statement and Note. The Lender's address is 20555 Victor Parkway, Livonia, MI 48152.

If this is a joint account, all Borrowers must sign this Agreement and each will be individually responsible and liable for the entire Account balance.

**1. TERMS OF THIS AGREEMENT:** Subject to all terms of this Agreement, I understand that Lender will make loan advances up to my Maximum Available Credit for   10   years from the date of this Agreement (the "Draw Period"). The Maximum Credit Line is the amount stated above. The Maximum Available Credit is the Maximum Credit Line less the sum of all unpaid advances. After the Draw Period, Lender will not make any additional loan advances and I will be required to pay off the existing loan balance under the Account as described below in Section 7(b). I will pay off this loan balance in full within  20  years from the last day of the Draw Period. This  20  year period shall be called the "Repayment Period."

**2. LOAN ADVANCES:** Upon signing this Agreement, Lender will open an Account in my name. I will be able to obtain loan advances on this Account by requesting an advance over the telephone.

I understand that Lender may (but is not required to) offer me additional methods for requesting a loan advance such as home equity line of credit checks. If Lender does provide additional methods, I understand that Lender may offer these new access methods in lieu of requesting a loan advance over the telephone. If this occurs, Lender will notify me in advance of the terms and procedures for such additional methods.

If Lender is prohibited by federal law from making loan advances to me under this Agreement until three (3) business days after this Agreement has been signed, Lender will wait until that Period has expired before giving me access to this Account. All loan advances together will be considered a single, consolidated loan and will be referred to as the Principal. For purposes of this section, the words "Business Days" mean any day other than a Sunday or legal holiday.

Lender may, at its sole option, not honor any request for an advance:

a) which is more than the Maximum Available Credit at that time,
b) which is intended to be used in payment of all or part of the amount I owe Lender on the Account,
c) if I am in default, as defined in Section 21, or
d) if my Account is frozen or restricted in accordance with Section 20.

Lender may make a loan advance from my Account and add to the unpaid Principal Balance any amounts Lender may pay on my behalf for the Closing Costs, if any, in Section 14 and such other charges related to my Account as Lender believes necessary to protect Lender's or my rights.

**3. PROMISE TO PAY:** I promise to pay the amount of all Principal, finance charges, late charges, dishonored check charges, and other charges and costs (including all costs of Lender in securing, perfecting and enforcing its lien) that may be due under this Agreement or under the Security Agreement signed in connection with this Account, including all charges that may exceed the Maximum Credit Line as provided for in this Agreement. All past due amounts shall be due and payable immediately upon demand by Lender.

**4. STATEMENTS:** At the end of each monthly billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed, Lender will send me a statement (the "Statement") showing the activity in my Account during the cycle and the minimum amount (the "Minimum Monthly Payment") I must pay by the due date stated thereon.

**5. PREPAYMENT:** I may prepay my Account balance in whole or in part at any time, however, I must pay at least the Minimum Monthly Payment as stated in Section 7 below.

**6. TERMINATION:** I may terminate this Account at any time, by notifying Lender in writing that I want to terminate this Account and paying all amounts that are due under this Agreement or will become due with the passage of time. If I terminate this account within   0   years from the date of this Agreement, then I will be charged a termination fee in the amount of $ 0.00.

**7. MINIMUM MONTHLY PAYMENTS:** The Billing Cycle will end on the 10th of each month or if the 10th is not a business day, then on the last business day preceding the 10th of the month. For purposes of this section, the words "Business Day" mean any day other than a Saturday, Sunday or legal holiday. I must pay my Account balance in amounts no less than the following Minimum Monthly Payments:

(a) Payments During the Draw Period: During the Draw Period, I will pay a Minimum Monthly Payment equal to all accrued finance charges, plus any fees or other charges assessed during the current billing cycle rounded up to the nearest penny. In addition to the Minimum Monthly Payment, I will pay all amounts past due and any amount in excess of my Maximum Credit Line.

(b) Payments During Repayment Period: During the Repayment Period, I will pay a Minimum Monthly Payment which shall be equal to the sum of: (1) 1/240th of the Principal balance as of the closing date of the billing cycle in which the Draw Period terminates; and (2) all accrued finance charges and any other fees or charges assessed during the current billing cycle. In addition to the Minimum Monthly Payment, I will pay all amounts past due and any amount in excess of my Maximum Credit Line.

(c) Application of payments: All payments shall be applied in the following order: finance charges, all other fees and charges, then to Principal.

**8. PERIODIC FINANCE CHARGES:** All loan advances to my Account are subject to Finance Charges, which accrue from the date the loan advance is posted to my Account until the date the loan advance is paid in full. There is no grace period during which I may repay a loan advance without incurring a Finance Charge. Lender calculates the Finance Charges on my Account by multiplying the Daily Periodic Rate by the Daily Balance of my Account. Other than my first billing cycle, there will be only one Daily Periodic Rate during a billing cycle (Section 9 ANNUAL PERCENTAGE RATE provides how the ANNUAL PERCENTAGE RATE, and therefore the Daily Periodic Rate, is determined.) My first billing cycle may have more than one Daily Periodic Rate. To get the Daily Balance, Lender takes the beginning Principal balance each day, adds any new loan advances and subtracts any payments of, or credits to, Principal. The Finance Charges for each day in the billing cycle are added together resulting in the Periodic Finance Charge for that billing cycle. Finance charges, late charges, dishonored check charges and other charges which are not added to the Principal balance and any payments of those charges are excluded from the Finance Charge calculation.

**9. ANNUAL PERCENTAGE RATE:** The Account is a variable rate plan, and the Daily Periodic Rate assessed may change monthly based on changes in the Index. The "Index" is the "Prime Rate" as published by "The Wall Street Journal," as of the first day of the billing cycle or, if no Index is published that day, then the most recent Index published prior to that day. If "The Wall Street Journal" publishes a range of Prime Rates on any day, then Lender will use the highest rate published. If "The Wall Street Journal" ceases to publish a Prime Rate, then Lender, in its sole discretion, may substitute a comparable Index. The ANNUAL PERCENTAGE RATE for any given billing cycle will be the Index plus the Margin.

A change in the Index will result in a change to the ANNUAL PERCENTAGE RATE and Daily Periodic Rate. The ANNUAL PERCENTAGE RATE includes only interest (Finance Charges) and no other costs of the Account. The ANNUAL PRECENTAGE RATE and Daily Periodic Rate may increase or decrease in accordance with this section. An increase or decrease to the ANNUAL PERCENTAGE RATE and the Daily Periodic Rate will increase or decrease your Minimum Monthly Payment.

The ANNUAL PERCENTAGE RATE will never exceed the lesser of (a) the Lifetime Cap that is stated on the first page of the Agreement or (b) the maximum rate that may be charged under applicable laws. If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Account exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from you which exceeded the permitted limits will be refunded to you. Lender may choose to make this refund by reducing the Principal owed under this Agreement or by making a direct payment to you. The Index, Margin, ANNUAL PERCENTAGE RATE and Daily Periodic Rate on the date of this Agreement are stated on the first page of this Agreement.

[N/A](Applies only if checked) Notwithstanding the foregoing, the ANNUAL PERCENTAGE RATE and Daily Periodic Rate stated on the first page of this Agreement are discounted and do not reflect the current value of the Index on the date of this Agreement. If these terms were not discounted, the ANNUAL PERCENTAGE RATE would be N/A and the Daily Periodic Rate would be N/A . These discounted terms will remain in effect for the initial N/A of the term of the Account, after which time the foregoing method of determining the ANNUAL PERCENTAGE RATE and Daily Periodic Rate will take effect and remain in effect for the remainder of the Account's term.

**10. LATE FEES:** Lender will charge me a late fee for any payment that is not received by Lender within Ten days of its due date. This fee will be equal to Five and No-Thousandths percent ( 5.000%) of the Principal and Finance Charge payment that is due .

**11. ANNUAL FEE:** Lender will charge me an annual fee of $75.00 beginning on the first anniversary of my Account and on each Anniversary thereafter. The annual fee will not be refunded if the Account is terminated or frozen before the end of any annual period, unless applicable law provides otherwise.

**12. DISHONORED CHECK CHARGE:** If any payment I make on my Account is by a check that is dishonored, for any reason, then Lender has the right to charge me a dishonored check charge equal to $ 0.00 .

**13. OVER LIMIT FEE:** If during any Billing Cycle, I exceed my Credit Line, then Lender may charge me an Over Limit charge of $ 0.00 . This fee will be charged regardless of Lender's decision to honor a check that created the Over Limit.

**14. FINANCE and CLOSING COSTS:** As itemized in the following list, I agree to pay charges as a condition of Lender opening my Account. Any amounts for these items advanced under the Account will be treated as Principal.

| Finance Costs: | Amount: |
|---|---|
| Flood Life of Loan Coverage | $4.00 |
| Settlement Fee | $50.00 |
| Finance Cost Totals : | $54.00 |

| Closing Costs: | Amount: |
|---|---|
| Recording Fees | $42.00 |
| Lender Paid Fees (Credit) | $96.00 |
| Closing Cost Totals: | $42.00 |
| Total Costs: | $0.00 |

**15. TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges for the Account.

**16. PROPERTY INSURANCE:** Under the Security Agreement, I must obtain property insurance in such amounts and against such risks as Lender may reasonably require with the insurance policy naming Lender, its successors and/or assigns, as loss payee. I may obtain property insurance (including flood insurance, when required) from any agent, broker or other person of my choice. However, for reasonable cause, Lender has the right to refuse to accept any insurance company or policy I present to Lender.

**17. COLLECTION COSTS:** Except in Wisconsin, if Lender refers my Account to an attorney or collection agency for collection, I agree to pay Lender's reasonable costs for collection, including all reasonable attorney's fees, not to exceed the maximum allowed by applicable state law.

**18. CREDIT REVIEW:** Now, and in the future, I authorize Lender at any time to make or order whatever credit investigation or reports Lender feels are necessary and proper to evaluate and re-evaluate my credit or financial standing and/or employment. I authorize Lender to share with credit bureaus, its credit experience with me.

**19. SECURITY:** I have given or will give Lender, a security interest or mortgage ("Security Agreement") on the real or personal property that is my principal or secondary residence which is located at:
601 Fairview Ave., Detroit, MI  48214

("the Security"). I warrant that this Security is the principal or secondary residence of, and owned by, either the Borrower and/or Co-Borrower. The Security Agreement will secure all amounts that I owe under this Agreement and under the Security Agreement. If I have given Lender, or will in the future give Lender, a lien or security interest in any of my property for some other obligation or in some other security agreement, then that property will also secure this Agreement, provided however, that if such property is my principal or secondary residence and is not the Security listed in this Section 19, then such property shall not secure this Agreement regardless of any other agreement between Lender and me.

**20. LENDER'S RIGHT TO FREEZE THE ACCOUNT OR REDUCE MY MAXIMUM CREDIT LINE:** In addition to any other rights Lender has under this Agreement, and subject to applicable law, Lender may either freeze my Account (not permit me to access my Account for additional loan advances) or reduce my Maximum Credit Limit if during the Draw Period any of the following occurs: (a) the value of the Security declines significantly below the value for which it is appraised or valued when the Account was opened; (b) Lender reasonably believes that I will be unable to make the payments required under this Agreement because of a material change in my financial condition; (c) I am in default of any material obligation under this Agreement; (d) Lender is prevented by any governmental action from applying to my Account the ANNUAL PERCENTAGE RATE that is provided for in this Agreement; (e) the priority of Lender's security interest in the Security is adversely affected by governmental action to the extent that the value of the Security is less than 120% of the Maximum Credit Line; or (f) Lender is notified by any appropriate regulatory authority that continued advances would constitute an unsafe and unsound practice. Lender will notify me if my Account is frozen or if my Maximum Credit Limit is reduced. If the reason for such action no longer exists and I would like my credit privileges restored, then it is my responsibility to request Lender to restore these privileges and to provide Lender with evidence, satisfactory to Lender, that such condition(s) no longer exists. If after the review of such evidence and after such other investigation Lender deems reasonable, Lender agrees that the condition(s) resulting in such action no longer exist and that no other condition that would permit such action currently exists, then Lender will restore my credit privileges.

**21. DEFAULT:** Subject to applicable law, I will be in default under this Agreement if any of the following occurs: (a) I fail to make any payment required by this Agreement; (b) the total amount of the unpaid advances exceeds my Maximum Credit Line and I fail to repay the excess amount when Lender requests payment; (c) any material statement in my application for credit, this Agreement, the Security Agreement or any other document I give Lender at any time with respect to this Account was, or is, false, misleading or fraudulent; (d) all borrowers have died; (e) I, or any owner of the Security, do not obtain and maintain the required property insurance and, if applicable, flood insurance on the Security; (f) the Security is condemned, in whole or in part, or is subjected to an eminent domain proceeding; (g) taxes, maintenance charges, common charges, assessments or any other charges that are liens on the Security are not paid when due; (h) the Security is sold or transferred without the consent of Lender; (i) a lien is permitted to be filed or placed on the Security which lien is superior to the lien of the Security Agreement; or (j) a lien which is superior to the lien of the Security Agreement is in foreclosure or Lender reasonably expects the lien to be foreclosed or the debt which such lien secures is in default.

**22. LENDER'S RIGHTS WHEN A DEFAULT IS DECLARED:** Once a default has occurred, whether or not Lender has declared the Account to be in default, Lender may, but is not required to, suspend the Account without notice to me, refuse to allow me to use the Account to make further advances and declare the entire balance then outstanding under the Account to be immediately due and payable. Lender may also begin to foreclose the lien of the Security Agreement as provided by law and/or the Security Agreement. This means that after legal proceedings, Lender may have the Security sold at my expense, in order to pay Lender what I owe it under this Agreement. The money remaining after all foreclosure and sale related expenses are paid is to be applied against the amounts then due Lender under this Agreement and I understand that I remain liable for any balance due under this Agreement if the money remaining is not enough to fully pay the amount due to Lender, plus its legal expenses, court costs, alternative dispute resolution expenses, and other expenses incurred in bringing the foreclosure action, as permitted by applicable state law. At any time after the suspension or acceleration of the Account, Lender has the sole right to reinstate the Account in accordance with its current procedures, without in any way waiving any rights Lender has under this Agreement.

**23. SALE OR TRANSFER OF THE SECURITY OR ADDITIONAL MORTGAGES:** If I sell or transfer ownership of the Security or enter into a contract to sell or transfer any ownership of the Security without the consent of Lender, then I will be in default and Lender may exercise all rights under Section 22. If I place another mortgage on the Security or otherwise further encumber it, then Lender may suspend my credit privileges and refuse to honor requests for a loan advance.

**24. CHANGE OF TERMS:** Subject to applicable law, Lender may not change the terms of this Agreement except (a) upon my written agreement, (b) if the change is insignificant or (c) if the change will unequivocally be to my benefit. Lender will notify me of all changes prior to the effective date of those changes.

**25. ASSIGNMENT:** I may not assign my Account privileges or delegate my obligation to repay amounts that I owe Lender to any other person without Lender's written consent. I understand that any attempt to assign such privileges or delegate such obligations without Lender's consent will be void and of no effect. This Agreement obligates me and my heirs and personal representatives. Lender may assign this Account at any time without my consent. If this Account is assigned by Lender, I will be given notice as required by applicable law.

**26. WAIVER:** Lender can waive or decline to enforce any of Lender's rights under this Agreement at any time without affecting any of Lender's rights under this Agreement. Without in any way limiting the preceding sentence, Lender does not have to tell me if any amount owing under this Agreement is not paid by the date it becomes due. In addition, Lender can do any of the following things without telling me and without losing any of Lender's rights against me or the Security: (a) accept as partial payment a check marked "Paid in Full" or with similar language as payment for any amount owing under this Agreement.; (b) give additional time for payment of any amount owing under this Agreement; or (c) exercise, delay exercising or give up any right against any person. In addition, Lender may delay enforcing any of Lender's rights under this Agreement or the Security Agreement or any other related rights without losing them. Any waiver by Lender of any other such rights will not be a waiver of those rights on any other occasion.

**27. JOINT ACCOUNTS:** If more than one person signs this Agreement, then this is a joint account and each signer will be individually responsible and liable for the entire account balance. Upon written request by any party to the Account or upon receipt of inconsistent written instructions, Lender may, at its sole option and without notice to any other party, refuse any request for a loan advance or for an increase in the Maximum Credit Line or refuse any other request with respect to the Account. Regardless of this, in the absence of a court order, Lender may, without liability on Lender's part, honor any request with respect to the Account from any Borrower or Co-Borrower in spite of Lender receiving inconsistent instructions or request.

**28. NOTICES:** I understand that I must notify Lender immediately in writing of any change in my financial or employment condition or change of address as shown on my application, as well as any judgment, lien, attachment or execution if issued against me or my property (including the Security). I also agree to notify Lender immediately with respect to a default on any other mortgage or agreement relating to the Security or if I move from the Property. All notices and monthly statements will be delivered to me at the Security address or at such other address as I may designate by notice to Lender. Notices sent to the address will be effective for all purposes under this Agreement.

**29. FIRST MORTGAGE:** I warrant and represent that (a) I will deliver to Lender complete copies of the First Mortgage(s) affecting the Security and the notes secured thereby; (b) all such First Mortgages are in full force and effect without default; and (c) the recording of the Security Agreement or other aspects of this transaction will not cause a default under that First Mortgage. I agree not to modify or extend the First Mortgage without the prior written consent of Lender, and agree to pay when and as due all amounts due under the First Mortgage and keep all promises made in the First Mortgage.

**30. ENTIRE AGREEMENT; CONTINUED EFFECTIVENESS:** I understand that this Agreement is the entire Agreement between Lender and me, and it may not be contradicted by evidence of any alleged oral agreement. Oral agreements or commitments to loan money, extend credit or renew such debt are not enforceable. To protect me (borrower(s)) and you (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it. If any part of this Agreement is determined by a court to be invalid, the rest will remain in effect.

**31. APPLICABLE LAW:** This Agreement and my Account will be governed by, and interpreted under, federal law to the fullest extent possible. To the extent federal law does not apply, then this Agreement and my Account shall be governed by, and interpreted under the state law where the property is located, whether or not I live in that state.



**Questions and Billing Errors:**

I will let Lender know immediately if I have any questions about my Statement. I can call Lender at the telephone number appearing on the Statement if I think Lender has made a mistake on my Statement. I will read and follow the Fair Credit Billing Act Notice, printed below, concerning my rights to dispute billing errors. Also, a statement of my rights will either appear on the back of each Statement or be sent to me annually.

I agree to the terms of this Agreement and the Security Agreement and acknowledge that I have each, individually and separately, received a copy of this Agreement, two copies of the Notice of Right to Cancel (if applicable) and a copy of the Security Agreement, all completely filled in.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

_Aubry Orr_   01/02/2007
Aubry Orr          Borrower

_____
          Borrower

_____
          Borrower

_____
          Borrower

2005/04   henote6.pcl


relationships that work

# green tree

Green Tree Servicing LLC
Asset Receivables Management
7360 South Kyrene Road
Tempe, AZ 85283-4583
1-877-835-6465

+ 0516933 000049846 9GALQ 0065358
AUBRY ORR
601 FAIRVIEW ST
DETROIT MI 48214-3232

| Account Number | 89740754 |
|---|---|
| Next Payment Due | 10/31/2014 |
| **Amount Due** | **$41,670.00** |

Payment address:
Green Tree
PO Box 94710
Palantine, IL 60094-4710

## Account Information

| | |
|---|---|
| Balance: | $41,670.00 |
| Property Address: 601 FAIRVIEW AVE | |
| DETROIT, MI 48214 | |
| Monthly Late Fee: | None |
| Interest Rate: | 0.00% |
| Interest Type: | None |
| Prepayment Penalty: | None |
| Date of Last Payment: | 03/01/2010 |

## Explanation of Amount Due

| | |
|---|---|
| Principal Due: | $41,670.00 |
| Interest Due: | $0.00 |
| (Interest accumulated prior to charge off) | |
| Attorney Fees: | $0.00 |
| Court Costs: | $0.00 |
| Misc Fees and Costs: | $0.00 |
| Bad Check Charges: | $0.00 |
| Pre-Charge Off Expenses: | $0.00 |
| Post Charge Off Expenses: | $0.00 |
| Transaction Surcharges: | $41,670.00 |
| Total to Bring Current: | $41,670.00 |

## Transaction Activity (4/16/2014 to 10/16/2014)

| Date | Description | Charges | Payments |
|---|---|---|---|
| **** NO TRANSACTIONS TO REPORT **** | | | |

## Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal Amount: | $0.00 | $0.00 |
| Interest Amount: | $0.00 | $0.00 |
| Fees: | $0.00 | $0.00 |
| Total: | $0.00 | $0.00 |

## ** Delinquency Information **

Date of Delinquency: 05/01/2008
Your account may be reported to one or more credit bureaus, and may be reviewed for possible legal action. **To bring your account current, $41,670.00 is due.**
**Housing Counselor Information:** If you would like counseling or assistance, you can contact the following:
• U.S. Department of Housing and Urban Development (HUD): For a list of home ownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

*Recent Account Activity*

| Date | Description | Charges | Payments |
|---|---|---|---|
| **** NO TRANSACTIONS TO REPORT **** | | | |

# EXHIBIT 4

**Please see back page for additional important information.**

SC0190-4

**Form 668 (Y)(c)**
(Rev. February 2004)

**Department of the Treasury - Internal Revenue Service**

## Notice of Federal Tax Lien

11883

Bernard J. Youngblood
Wayne County Register of Deeds
June 07, 2013 09:00 AM
Inst:2013302497 USL Pages:1
Liber:50838 Page:1418

| Area: | Serial Number | For Optional Use |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (800) 913-6050 | 941781613 | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer  AUBRY ORR

Residence    601 FAIRVIEW ST
             DETROIT, MI 48214-3232

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2001 | XXX-XX-6082 | 04/09/2007 | 05/09/2017 | 9760.28 |
| 1040 | 12/31/2001 | XXX-XX-6082 | 04/09/2007 | 05/09/2017 | 8366.41 |
| 1040 | 12/31/2006 | XXX-XX-6082 | 10/20/2008 | 11/19/2018 | 540.66 |
| 1040 | 12/31/2007 | XXX-XX-6082 | 08/18/2008 | 09/17/2018 | |
| 1040 | 12/31/2007 | XXX-XX-6082 | 10/08/2012 | 11/07/2022 | 1546.66 |

Place of Filing

REGISTER OF DEEDS
WAYNE COUNTY
DETROIT, MI 48226

Total $    20214.01

This notice was prepared and signed at    DETROIT, MI    , on this,

the  29th  day of  May  , 2013 .

| Signature | Title |
|---|---|
| for ERIKKA A ASHFORD | REVENUE OFFICER        22-04-4416 |
| | (313) 628-3603 |

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

# EXHIBIT 5

**Form 668 (Y)(c)**
(Rev. February 2004)

11883

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

Bernard J. Youngblood
Wayne County Register of Deeds
June 07, 2013 09:00 AM
Inst:2013302498
Liber:50838 USL Pages:1
Page:1419

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #2<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>941781713 | For Optional Use by |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer AUBRY ORR & VIETTE MIXON ORR

Residence         601 FAIRVIEW ST
                  DETROIT, MI 48214-3232

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2010 | XXX-XX-6082 | 05/30/2011 | 06/29/2021 | 2216.64 |

Place of Filing

REGISTER OF DEEDS
WAYNE COUNTY
DETROIT, MI 48226

Total $   2216.64

This notice was prepared and signed at ____DETROIT, MI____ , on this,

the __29th__ day of __May__ , __2013__.

| Signature<br><br>for ERIKKA A ASHFORD | Title<br>REVENUE OFFICER<br>(313) 628-3603          22-04-4416 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Bernard J. Youngblood
Wayne County Register of Deeds
May 11, 2009  12:12 PM
Liber 47905 Page 262-262
#209193554  LN  FEE: $15.00

# EXHIBIT 6

## NOTICE OF LIEN FOR NONPAYMENT OF ASSESSMENTS
### Act No. 59, Public Acts of the State of Michigan, 1978, as amended

The undersigned, being first duly sworn, deposes and says:  That he is the Attorney for Jefferson Village II Condominium Association and that he is duly authorized to make this Affidavit on behalf of the Association. Affiant further states that there exists a lien for nonpayment of assessments made against the real estate described below, which lien arises by virtue of Section 559.208 of the Complied Laws of the State of Michigan, 1978, and Article II, of the Condominium Bylaws of Jefferson Village II Condominium Association,, a condominium project, recorded as part of the Master Deed of said Condominium.

There is outstanding and unpaid on account of said assessments the sum of $775.00, through April 27, 2009 exclusive of interest, late charges, costs and attorney fees, any future assessments which may become due, and that foreclosure of said lien may result in the termination of the interest of the owner(s) in the real estate described below.  That pursuant to Article II, of the Condominium Bylaws, MCLA Section 559.206 and MCLA Section 559.211, the Association may recover the costs and reasonable Attorney fees incurred in collecting said assessments.  Further, pursuant to Article II, of the Condominium Bylaws, the Association may declare all unpaid installments of the annual assessments for the pertinent fiscal year immediately due and payable.  In addition, pursuant to MCLA Section 559.208, a foreclosure proceeding may be commenced after the tenth day from the date of mailing this Notice of Lien by first class mail to the Owner of Record and pursuant to Article II, of the Condominium Bylaws, a Receiver may be appointed in said foreclosure action.  The real property with respect to which this Affidavit is made is located in the City of Detroit, County of Wayne, State of Michigan, and more particularly described as:

Unit 66, Jefferson Village II Condominium, according to the Master Deed recorded in Liber 44330, Pages 123, et. seq. Wayne County Records, and designated as Wayne County Condominium Subdivision Plan No. 904.

Dated:  April 27, 2009

OWNER OF RECORD:          Aubry Orr and Viette Orr
PROPERTY ADDRESS:        601 Fairview St., Detroit, MI 48214

Jefferson Village II Condominium Association

By: _____

Nathaniel Abbate Jr., DICKINSON WRIGHT PLLC
Attorney for
Jefferson Village II Condominium Association

STATE OF MICHIGAN     )
                      ) SS
COUNTY OF OAKLAND     )

On April 27, 2009 before me appeared Nathaniel Abbate Jr., Dickinson Wright PLLC, the attorney for Jefferson Village II Condominium Association, a Michigan non-profit corporation known to me to be the person who executed the above Notice of Lien on behalf of said corporation, being so authorized to execute said instrument by the Board of Directors and Corporation.

Drafted by and when recorded return to:

MARK F. MAKOWER, ESQ.
38525 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
37607-2
04/09/67
BLOOMFIELD 99999-1153 836803v1

_____
Notary Public

KELLY J. BELCHER
Notary Public, State of Michigan
County of Oakland
My Commission Expires: October 27, 2010
Acting in the County of Oakland